# EXHIBIT A

Electronically FILED by Superior Court of California, County of Los Angeles on 01/13/2022 08:39 PM Sherri R. Carter, Executive Officer/Clerk of Court, by C. Monroe,Deputy Clerk

Case 2:22-cv-04338-SVW-AS   Document 1-2   Filed 06/24/22   Page 2 of 42   Page ID #:14

Assigned for all purposes to: Stanley Mosk Courthouse, Judicial Officer: Richard Burdge

LAW OFFICES OF NEEMA TAVAKOLI
Neema Tavakoli, Esq. (SBN 326866)
4924 Balboa Blvd., Suite 613
Encino, CA 91316
Tel: 310.967.9048
Fax: 818.475.1484
Neema.ntlaw@gmail.com

Attorney for Plaintiff AKBAR AFRIDI

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF LOS ANGELES, CENTRAL DISTRICT

| | |
|---|---|
| AKBAR AFRIDI,<br><br>               Plaintiff,<br><br>vs.<br><br>WEST HILLS HOSPITAL AND MEDICAL CENTER; MARK MILLER, and DOES 1 to 50, inclusive,<br><br>               Defendants. | CASE NO.   22STCV01623<br><br>**PLAINTIFF AKBAR AFRIDI'S COMPLAINT FOR:**<br><br>  **1. WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY**<br><br>  **2. BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**<br><br>  **3. BREACH OF IMPLIED PROMISE NOT TO TERMINATE WITHOUT GOOD CAUSE**<br><br>  **4. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**<br><br>  **5. VIOLATION OF CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT (FEHA) § 12940, *et seq.***<br><br>  **6. VIOLATION OF CALIFORNIA LABOR CODE §§ 201, 203, 218, 226.7, 1194 [Wage, Hour, Meal Break, Vacation and Benefit Payments]**<br><br>  **7. WHISTLEBLOWER PROTECTION [LC 1102]**<br><br>  **8. RETALIATION [GC 12940(h)]**<br><br>  **9. BREACH OF CONTRACT**<br><br>[JURY TRIAL DEMAND] |

1

**PLAINTIFF'S COMPLAINT**

**Plaintiff AKBAR AFRIDI, alleges as follows:**

**PRELIMINARY STATEMENTS APPLICABLE TO ALL CAUSES OF ACTION**

1.   Plaintiff is informed, believes, and thereon alleges that Defendants WEST HILLS HOSPITAL AND MEDICAL CENTER ("WHH"), MARK MILLER (the CEO of WHH) and Does 1-10, inclusive, have common management, centralized control of labor relations, common ownership, and financial control, overlapping employees, common corporate headquarters, and interrelated operations such that their entities operated as a single, integrated enterprise regarding Plaintiff's employment. Alternatively, Plaintiff is informed, believes, and thereon alleges that Defendants WHH, MARK MILLER and Does 1-10, inclusive, were his joint employers.

2.   The Los Angeles County Superior Court has jurisdiction over all claims stated in this Complaint. The Los Angeles County Superior Court, Central District, is the proper venue for this action because, among other reasons, the unlawful practices alleged herein were committed in the County of Los Angeles, and because the records relevant to these unlawful practices are maintained and administered by Defendants at their corporate headquarters located in the City of Los Angeles, County of Los Angeles, and State of California.

3.   Plaintiff is ignorant of the true names and capacities of Defendants sued herein as Does 1 through 50, inclusive, and therefore sues Defendants by such fictitious names. Plaintiff is informed and believes and thereon alleges that at all times herein stated each such fictitiously named Defendant was and is responsible in some manner for the occurrences herein alleged, and that Plaintiff's injuries and/or damages were and are directly and/or proximately caused thereby. Plaintiff is informed and believes and thereon alleges that each such fictitiously named Defendant is directly and/or indirectly liable on one or more causes of action set forth herein.

4.   Plaintiff is informed and believes and thereon alleges that at all times herein relevant, each of the Defendants, including each fictitiously named Defendant, was the agent, servant, joint venturer, authorized representative and/or employee of each of the remaining Defendants, and, except as provided herein, in doing the acts and things hereinafter alleged, was acting within the course and scope of said agency, joint venture, representative, servitude and/or employment,

2

consent, approval and subsequent ratification of each of the remaining Defendants. Each of the Defendants was authorized and empowered by each of the other Defendants to act and did act as the principal, employee, or agent of each of the other Defendants. Plaintiff is further informed and believes and thereon alleges that, except as provided herein, each Defendant was acting within the course and scope of his/her/its authority in performing the acts herein alleged, and that the acts of each Defendant as alleged herein were authorized and/or ratified by the other Defendants and with the knowledge, consent, and/or permission of each of the remaining Defendants.

## STATEMENTS OF FACTS APPLICABLE TO ALL CAUSES OF ACTION

5.   Defendant WHH is a privately held hospital and medical center; a full-service acute care facility providing services including but not limited to emergency services, surgical procedures, and respiratory care. It's located at 7300 Medical Center Dr. West Hills, CA 91307.

6.   Defendant MARK MILLER was and is, on information and belief, the CEO of WHH whose responsibilities includes hospital administration that includes human resources, employment, retention of employees, discipline, and termination.

7.   On or about December 12, 2011, Defendants, and each of them, hired Plaintiff for the position of Certified Respiratory Therapist, Level 3. Plaintiff is informed and believes and thereon alleges that he was hired substantially due to his superior education, background, training, and experience, all of which were fully vetted by Defendants and each of them before Defendants made their hiring decision as to Plaintiff. At the time of his hiring, Plaintiff was known to Defendants and each of them, as having a date of birth of January 1, 1962, making him nearly age 50 at the time of hire; that he had been a full-fledged medical doctor in his country of birth and origin, Afghanistan, that he had emigrated to the United States and immediately trained to become a Respiratory Therapist, that he became licensed as a California respiratory care therapist on September 23, 1994 and thus on his date of hire in 2011, Plaintiff was one of the most experienced and senior Respiratory Therapists who would be working for and with Defendants and each of them.

3

8.   Plaintiff was extremely well-qualified for the position of Certified Respiratory Therapist Level 3, having worked as a

medical doctor in Afghanistan for over a decade before coming to the United States where he completed an advanced course of study from an accredited program for respiratory care, followed by certification by the National Board for Respiratory Care and then work experience that had resulted in his progress up the ladder to a Level 3 CRT.

9.   At the time of his hire, Plaintiff was informed that he was to be employed pursuant to an Alternative Work Schedule ("AWS") which covered most patient care staff units at Defendant WHH. As part of the terms of his employment, Plaintiff AFRIDI was assigned to work three 12-hour shifts, would be entitled to two (2) meal breaks, and to premium pay (double time) in the event he worked over twelve (12) hours. He was also to be compensated for hours in excess of forty (40) in a week at the premium rate of one and one-half times his regular rate of pay.  In addition, Plaintiff signed a waiver providing that he agreed to waive one of the meal breaks during twelve-hour shifts.   However, at the time of his hire, Defendants, and each of them represented to Plaintiff that the AWS had been implemented pursuant to a vote of the employees on October 1, 2000.  Plaintiff is informed and believes and thereon alleges that such a vote of the employees in fact did not take place as required by law.  Plaintiff is informed and believes and thereon alleges that the California Department of Labor Standards Enforcement has no record of this election, as required by law, which would make the AWS illegal, subjecting Defendants, and each of them, to penalties for violating the wage and hour provisions of the California Labor Code.

10. Plaintiff proceeded to undertake his duties with pride and a determination to provide care to patients in a superior manner.  His performance record demonstrated that he achieved that objective.  He was a consistent, above-average performer who was well-regarded by his colleagues and supervisors alike.  The comments from the years 2011-2019, inclusive, on all his annual Performance Reviews consistently reflected the high quality of patient care he delivered. The Performance Reviews were not subjective.  They were backed up consistently by clinical

**PLAINTIFF'S COMPLAINT**

examinations of his skills by supervisory evaluators of his clinical skills at the time of the Performance Reviews. Throughout his employment, he passed all clinical examinations, demonstrating his proficiency and knowledge. For example, the review administered in January 2018 was especially noteworthy as it was administered **after** the only incident for which Mr. Afridi was formally disciplined during his employment and prior to his termination. That incident took place in the summer of 2016 when a misunderstanding led to Plaintiff's failure to obtain updated license documentation, resulting in a brief suspension. Yet the 2018 review does not mention that suspension-related incident but instead focuses on Plaintiff's superior job performance.

11. In his 2018 Performance Review, Plaintiff is described in glowing terms as "Exceeds Expectations" and includes language similar to his previous Performance Reviews, by stating: "Akbar is an experienced NICU and Adult therapist. He is well regarded for his strong clinical skills. Akbar takes initiative to effectively communicate concerns and suggestions to improve processes. He consistently aims for cleanliness of his work surroundings. Akbar is motivated in delivering quality patient care and patient satisfaction. . . Great to have Akbar on the team."

12. In or about December 2018, Glenn Van Houten ("Van Houten") was assigned as the new Director of Respiratory Care Services at WHH. Plaintiff thereafter reported directly to Van Houten. It was soon after Van Houten joined Respiratory Care Services that Plaintiff AFRIDI began experiencing hostility in the workplace. For example, the first time he approached Van Houten in his office to introduce himself, Van Houten ignored Plaintiff's outstretched hand, refusing to shake hands, and instead remained seated in his chair. Van Houten knew or should have known that this refusal to shake hands was a particularly egregious affront to an immigrant from Afghanistan. Van Houten's behavior was in stark contrast to Van Houten's treatment of a Caucasian Respiratory Therapist, who he greeted warmly by standing up and shaking his hand in the presence of Plaintiff.

13. In December 2018, when Van Houten became Plaintiff's supervisor, as Director of

5

Respiratory Care Services at Defendant WHH, Plaintiff was the most senior Respiratory Therapist working at and for Defendants, and each of them, in terms of his chronological age.  In December 2018, Plaintiff was just a couple of weeks shy of age 57.

14. Van Houten's mistreatment of Plaintiff continued following their initial meeting in December 2018.  For example, on virtually all occasions where Plaintiff would approach him with a work-related comment or concern, Van Houten showed unusual and intense resistance to Plaintiff's ideas and comments, frequently ignored him, and openly treated him with disdain and in a demeaning manner, even in the presence of colleagues, to emphasize his specific dislike of Plaintiff.

15. Shortly after Van Houten took over as Director of Respiratory Care Services, he initiated a campaign to perform more respiratory procedures within a certain time frame and to increase efficiency.  Unfortunately, the methods he chose to accomplish these objectives were in conflict with applicable, established verbal and written protocols, respiratory care standards of care, and ethical rules, all being deleterious to the rights and safety of patients.  Many of the procedures were accomplished through use of the Bi-level Positive Airway Pressure ventilators ("BiPAP") which provide positive pressure to assist with various breathing problems.  BiPAP protocols necessitated frequent changes of the masks and/or nasal plugs being used by the patients. However, necessary elements for the procedures that required sufficient time for appropriate fitting and acclimation to the mask devices were not properly followed.  For example, great care is required when affixing and removing the masks, which may include Continuous Positive Air Pressure ("CPAP") in addition to or in conjunction with BiPAP.  Pursuant to the instructions from Van Houten, Plaintiff was required to skip or minimize certain safety procedures related to removing the masks from patients.  In, addition, the duration of the treatments Plaintiff normally administered with the BiPAP was approximately fifteen minutes, a time frame generally considered by applicable protocols to be necessary to achieve optimal titration.  However, Plaintiff was instructed to perform these procedures in approximately seven minutes.  This was a deviation from established protocol that implicated patient safety concerns relative to appropriate

6

1  time for mask fitting, titration, and the obvious fact that the patient was receiving only 46% of

2  the amount of treatment prescribed by the manufacturer through its protocols.

3      16. Plaintiff reasonably concluded that this dramatic shortening of a time frame

4  considered necessary by applicable protocols for patient care and safety constituted a violation of

5  applicable regulations governing the use of BiPAP and related masks in the respiratory therapy

6  health care context.  It is important to bear in mind that the protocols are generally established as

7  part of the FDA licensing process and therefore deviation therefrom may have legal

8  consequences.  In addition, Plaintiff reasonably concluded that the new instructions from Van

9  Houten, on behalf of Defendants, and each of them, constituted violations of Plaintiff's ethical

10  duties as set forth in, *inter alia*, the code of Medical Ethics of the AMA, and by the American

11  Association of Respiratory Care.  Plaintiff cannot be compelled, under California law, to violate

12  these rules and then be disciplined for complying with applicable standards and laws. As a final

13  demonstration that Plaintiff had a good faith belief that instructions to dramatically shorten the

14  time of respiratory procedures administered with BiPAP machines and related respiratory

15  devices violated applicable regulations and/or other terms of his employment, one need look no

16  further than the fact that Defendants, and each of them, recognized the dangers of misuse of

17  medical devices.  Defendant WHH educated its employees and obtained their acknowledgment

18  of the terms of the Safe Medical Device Act of 1995.  This Acknowledgment (signed by Plaintiff

19  when he was hired) clearly defines medical devices, and the fact that it is a violation of the Safe

20  Medical Device Act to fail to report "serious illness and serious injury," which includes

21  "permanent impairment of a body function or permanent damage to a body structure."

22  Obviously, this would apply to the respiratory and pulmonary body structures affected by the use

23  of BiPAP and related equipment.

24      17. Plaintiff's opposition to Defendant WHH's new practice of "cutting corners" in the use of

25  respiratory equipment was based on his good faith belief that such changes could potentially

26  result in serious illness and/or serious bodily injury.  Not only did Plaintiff's objections

27  communicated to his superiors at WHH constitute protected activity under the law, but Plaintiff

28

7

**PLAINTIFF'S COMPLAINT**

had a duty as an employee at WHH to oppose practices that could lead to a reportable incident under the Safe Medical Device Act. On at least half a dozen occasions after Van Houten became Plaintiff's supervisor and prior to his September 2019 employment termination, Plaintiff verbally communicated to his supervisor and supervisory personnel at WHH his objections to how he was being asked to practice respiratory therapy. His complaints were made verbally over the phone and in person. Each time Plaintiff was told by Van Houten and/or other supervisory personnel at WHH to not concern himself with the protocols but to simply carry out what he was being told. It is reasonably clear that within a relatively short time after he expressed his opposition to the new practices and their disregard for patient safety, Plaintiff was perceived by Defendants and each of them to be a potential witness or whistleblower in the event that any patient suffered injury as a result of the new practices.

18. On or about July 23, 2019, Defendant WHH issued a formal written warning against Plaintiff for a "no call, no-show" ("NCNS") incident.  Plaintiff had failed to appear due to a misunderstanding about his schedule.  He explained this excusable event but to no avail.

19. Shortly thereafter, on September 30, 2019, Defendant WHH issued another write-up to Plaintiff allegedly based on another NCNS.  This one grossly exaggerated a situation where Plaintiff was approximately 15 minutes late to work for reasons stated to Defendants and each of them at the time that were understandable and excusable. But such a reasonable response was not forthcoming from an employer and supervisory individuals such as Defendants and each of them bent on retaliation and a desire to terminate Plaintiff's employment at the first trumped-up ground they could find.  Based on the alleged timing of a second NCNS, Defendant WHH rejected any opportunity to use progressive discipline or coaching and instead summarily terminated Plaintiff on or about September 30, 2019.

20. On or about July 22, 2020, Plaintiff received a letter from the UnitedHealthcare Workers West Service Employees International Union, CLC notifying Plaintiff that he had exhausted his grievance appeal process and that the "panel has determined that your case should not be advanced to arbitration . . . this decision is final." A true and correct copy of this letter is

8

attached hereto as Exhibit "A".

21. On or about August 27, 2020, date, Plaintiff filed complaints with the Department of Fair Employment & Housing (the "DFEH Complaint") and the EEOC against Defendants for, inter alia, violations of age, race, national origin, and retaliation. On or about August 27, 2020, the DFEH issued a Notice of Case Closure and Right to Sue ("Right to Sue Letter") on said Complaint. True and correct copies of the DFEH/EEOC Complaint and Right to Sue Letter are attached hereto as Exhibits "B" and "C", respectively.

22. On or about October 3, 2020, Plaintiff served true and correct copies of his DFEH/EEOC Complaint and Right to Sue Letter via certified mail pursuant to Government Code Section 12962.

## FIRST CAUSE OF ACTION

### (Wrongful Termination in Violation of Public Policy as to all Defendants and Does 1 through 50, inclusive)

23. Plaintiff realleges and incorporates herein by reference paragraphs 1 through 22, inclusive, as if fully set forth herein.

24. Termination of employment in retaliation for opposing unlawful or unsafe conduct has been recognized as a form of wrongful termination in California at least since 1959.  In 1980, the California Supreme Court decided the landmark case *Tameny v. Atlantic Richfield Co.* (1980) 27 Cal.3d 167, holding that termination of an employee for refusing to participate in a price fixing scheme that violated state and federal law violated public policy.  The Supreme Court noted that: "An employer's authority over its employee does not include the right to demand that the employee commit a criminal act to further its interests, and an employer may not coerce compliance with such unlawful directions by discharging an employee who refuses to follow such an order.  An employer engaging in such conduct violates a basic duty imposed by law upon all employers."  Thus, the court in *Tameny* made it clear that the duty to refrain from termination in retaliation for refusing to violate the law expressed in certain statutes exists irrespective of the "at will" status of the employment relationship.  Obviously, termination of an

9

1   employee who indicates that he opposes the violation of law is also prohibited.

2       25. Plaintiff's opposition to the decisions and orders by Defendants and each of them that led

3   to Defendant WHH's decision to terminate Plaintiff's employment, said decisions and orders

4   including the decisions and orders to substantially modify the protocols applicable to use of the

5   BiPAP, CPAP and related respiratory equipment is more than adequate to support a claim for

6   wrongful termination in violation of public policy.  The health care profession and the acute care

7   hospitals where health care is practiced on a daily basis are highly regulated around the central

8   objective of patient safety.  Defendants, and each of them, know this fundamental truism, as

9   demonstrated by the training it/they provide and their practice of obtaining acknowledgments

10  from employees regarding the mandates of the Safe Medical Device Act of 1995.

11      26. By reason of the foregoing, Plaintiff has been unable to engage in his usual and

12  customary employment for a substantial amount of time since his termination and Plaintiff is

13  informed and believes and thereon alleges that he will be unable to work in his usual and

14  customary employment for an indefinite period in the future, all to Plaintiff's damage in an

15  amount to be shown according to proof.

16      27. As a direct and proximate result of the misconduct of Defendants, and each of them, and

17  the resulting termination of Plaintiff's employment, Plaintiff sustained severe and serious injury

18  to his person, all to Plaintiff's damage in a sum to be shown according to proof.

19      28. By reason of the foregoing, Plaintiff has suffered harm including, but not limited to,

20  humiliation, embarrassment, and mental anguish, all to Plaintiff's damage in an amount to be

21  shown according to proof.

22                              **SECOND CAUSE OF ACTION**

23  **(Breach of implied covenant of good faith and fair dealing as to all Defendants and Does 1**

24                              **through 50, inclusive)**

25      29. Plaintiff realleges and incorporates herein by reference paragraphs 1 through 22,

26  inclusive, as if fully set forth herein.

27      30. The employment agreement referred to above contained an implied covenant of good

28

faith and fair dealing, which obligated Defendants and each of them to perform the terms and conditions of the agreement fairly and in good faith and refrain from doing any act that would prevent or impede Plaintiff from performing any and all of the conditions of the contract that he agreed to perform, or any act that would deprive Plaintiff of the benefits of the contract.

31. Into the relationship between each employer and employee, the State of California implies a covenant of good faith and fair dealing. This covenant requires that each party to the employment agreement act with fairness and good faith toward the other, and that neither party should take any action to prevent the other from reaping the benefits of the relationship.

32. Plaintiff substantially performed all the duties and conditions of the employment agreement he had with Defendants, and each of them.

33. Defendants and each of them knew that Plaintiff had substantially fulfilled all his duties and conditions under the contract.

34. Defendants and each of them breached the implied covenant of good faith and fair dealing under the employment agreement by causing, permitting, condoning, and ratifying the actions and omissions to act as hereinabove alleged on the part of Defendants and each of them and by intentionally, and in bad faith, terminating Plaintiff's employment for reasons extraneous to the contract. Plaintiff is informed and believes and thereon and alleges, that Defendants terminated Plaintiff without good, just, or legitimate cause. Plaintiff is informed and believes his termination by Defendants, and each of them, was premised on, among other things, his age and national origin as one from Afghanistan and the Middle East.

35. By reason of the foregoing, Plaintiff has been unable to engage in his usual and customary employment for a substantial amount of time since his termination and Plaintiff is informed and believes and thereon alleges that he will be unable to work in his usual and customary employment for an indefinite period in the future, all to Plaintiff's damage in an amount to be shown according to proof.

36. As a direct and proximate result of the misconduct of Defendants, and each of them, as aforesaid, Plaintiff sustained severe and serious injury to his person, all to Plaintiff's damage in a

11

1  sum to be shown according to proof.

2      37. By reason of the foregoing, Plaintiff has suffered harm including, but not limited to,

3  humiliation, embarrassment, and mental anguish, all to Plaintiff's damage in an amount to be

4  shown according to proof.

5                          **THIRD CAUSE OF ACTION**

6  **(Breach of implied promise not to terminate without good cause as to all Defendants and**

7                      **Does 1 through 50, inclusive)**

8      38. Plaintiff realleges and incorporates herein by reference paragraphs 1 through 22,

9  inclusive, as if fully set forth herein.

10     39. Without misconduct on the part of Plaintiff and without good, just or legitimate cause,

11  Defendants breached the subject employment agreement by engaging in conduct separate and

12  apart from performance of obligations under the agreement, without good faith and in

13  contravention of the implied agreement not to terminate Plaintiff's employment except for good

14  cause, by, among other things, terminating Plaintiff because of his age, and national origin

15  perpetrated by Defendants and each of them.

16     40. By reason of the foregoing, Plaintiff has been unable to engage in his usual and

17  customary employment for a substantial amount of time since his termination and Plaintiff is

18  informed and believes and thereon alleges that he will be unable to work in his usual and

19  customary employment for an indefinite period in the future, all to Plaintiff's damage in an

20  amount to be shown according to proof.

21     41. As a direct and proximate result of the misconduct of Defendants, and each of them, as

22  aforesaid, Plaintiff sustained severe and serious injury to his person, all to Plaintiff's damage in a

23  sum to be shown according to proof.

24     42. By reason of the foregoing, Plaintiff has suffered harm including, but not limited to,

25  humiliation, embarrassment, and mental anguish, all to Plaintiff's damage in an amount to be

26  shown according to proof.

27

28

**PLAINTIFF'S COMPLAINT**

1

2

3

**FOURTH CAUSE OF ACTION**

**(Intentional infliction of emotional distress as to all Defendants and Does 1 through 50, inclusive)**

4      43. Plaintiff realleges and incorporates herein by reference paragraphs 1 through 22,

5  inclusive, as if fully set forth herein.

6      44. Plaintiff is informed and believes that the actions of Defendants and each of them, in

7  knowingly terminating Plaintiff due to his age and national origin as a pretext for Plaintiff's

8  justifiable expressions of objection and concern for unsafe health care practices he was asked to

9  implement were intentional, extreme, outrageous and done with the intent to cause emotional

10  distress or with reckless disregard of the probability of causing Plaintiff's emotional distress.

11      45. The conduct of the Defendants, and each of them, included, but is not limited to, the

12  following: Defendants, without following their own company procedures, terminated Plaintiff's

13  employment with the knowledge that this conduct would result in the denial of wages,

14  desperately needed medical care and various other work-related compensation and benefits to

15  Plaintiff, as well as consequential economic damages. Defendants, and each of them, continued

16  their outrageous conduct after termination by defaming Plaintiff's good name by spreading false

17  rumors throughout the Respiratory Therapy community of Greater Los Angeles and associated

18  hospitals.

19      46. As a direct and proximate result of the Defendants' conduct, Plaintiff has been subjected

20  to severe emotional distress and will continue to suffer severe and permanent humiliation, mental

21  pain and anguish, and will continue to live in a constant state of emotional tension and distress.

22      47. As a direct and proximate result of the Defendants' conduct, Plaintiff has suffered and

23  continues to suffer substantial losses in income, earnings, benefits, and has been damaged in his

24  capacity to earn his salary and has lost and will continue to lose employment benefits, all to

25  Plaintiff's damage in an amount to be shown according to proof.

26      48. The conduct of Defendants in causing Plaintiff's employment to be terminated without

27

28

13

good, just or legitimate cause subjected Plaintiff to cruel and unjust hardship in conscious

disregard to Plaintiff's rights. As it was anticipated by Defendants that Plaintiff would be unable

to find comparable employment in the foreseeable future, Plaintiff is informed and believes and

thereon alleges, that his termination by Defendants was done with an intent to cause injury to

Plaintiff. Because of the aforesaid oppressive, malicious, and despicable conduct, Plaintiff is

entitled to an award of punitive damages in a sum to be shown according to proof.

**<u>FIFTH CAUSE OF ACTION</u>**

**(Violation of California fair employment and housing act (FEHA) Section 12940, *et seq.* as to all Defendants and Does 1 through 50, inclusive)**

49. Plaintiff realleges and incorporates herein by reference paragraphs 1 through 22, inclusive, as if fully set forth herein.

50. Discrimination on the basis of age and national origin violates the California Fair Employment and Housing Act ("FEHA"). *California Government Code* § 12940, *et seq*., (as well as provisions of the federal and state Constitutions). Any adverse employment decision constitutes a violation of FEHA if a substantial factor motivating the decision was one or more of the protected categories (in this case, age and national origin). The treatment of Plaintiff by Defendants and each of them, in a sudden reversal after Van Houten took over as Director of the Respiratory Care Department and became Plaintiff's supervisor, demonstrated hostility toward Plaintiff as an immigrant from the Middle East and especially the nation of Afghanistan, that was too obvious to ignore given the speed with which Plaintiff was fired after Van Houten took over as Plaintiff's supervisor. The treatment of Plaintiff after December 2018 demonstrated unlawful hostility toward Plaintiff and thus discrimination based on national origin. As for Plaintiff's age, that same sudden reversal of respect whereby younger therapists were treated with more respect by Defendants and each of them demonstrates discrimination based on age. The prevention of age discrimination is such an important priority that the State Legislature strengthened the law during 1999 by amending the FEHA to include *Government Code* § 12941, prohibiting age discrimination. The declaration of legislative intent demonstrates the importance of our state's

**PLAINTIFF'S COMPLAINT**

commitment to the elimination of age discrimination in the workplace and describes the

deleterious effects of such discrimination on our society:

"The Legislature hereby finds and declares its support of the following pronouncements.

(a) "...the practice of age discrimination, like other invidious forms of discrimination, 'foments domestic strife and unrest' in the workplace ... making for a more stressful and ultimately less productive work environment ..."

(b) "there can be little doubt that the FEHA's express policy condemning employment discrimination against older workers is one that benefits the public at large. Because average life expectancy has risen to more than 80 years, most California residents either are now or will become over-40 employees, thus creating an extraordinarily broad class of potential victims of age discrimination in employment ..."

(c) "The pernicious effects of age discrimination in employment are not confined to employees who are its immediate targets. As the Legislature has recognized in Unemployment Insurance Code section 2070, discrimination against older workers violates the public policy that "(an employee's skills and potential) should be used to their fullest extent,' thereby depriving society at large of the benefit of valuable human resources..."

(d) "The FEHA's policy against age discrimination in employment is ... similar in important ways to the policies against race and sex discrimination ... age discrimination violates the basic principle that each person should be judged on the basis of individual merit, rather than by reference to group stereotypes ..."

(e) "Age, like race and sex, is the product of the workings of nature rather than the individual's free choice; once acquired, the status of being over 40 is as permanent and immutable as race or sex.

"Age discrimination attacks the individual's sense of self-worth . . . Indeed, age discrimination (or "ageism,' as it is sometimes called" has    been defined as "a systematic stereotyping of and discrimination against people because they are old, just as racism and sexism accomplish this with skin color and gender ..."

15

**PLAINTIFF'S COMPLAINT**

51. Mr. Van Houten clearly treated Plaintiff less favorably than the non-Middle Eastern and younger employees.  From his first day as Director of the Respiratory Care Department at WHH, Mr. Van Houten demonstrated that Plaintiff would be treated differently than the other employees.  It is simply unbelievable that a person with Plaintiff's consistent track record of excellence over seven years of employment could suddenly and inexplicably deteriorate.  A much stronger inference is that Plaintiff was summarily fired due to age and national origin on trumped-up insubstantial NCNS charges shortly after Mr. Van Houten became Plaintiff's supervisor, and shortly after Plaintiff expressed his opposition to the shortcuts being taken with the proper respiratory procedures.

52. The conduct of Defendants in terminating Plaintiff's employment without good, just or legitimate cause and because of his age and national origin, perpetrated by Defendants and each of them, violated California public policy including, but not limited to, California Government Code Section 12940 Article I, Section 8, of the California Constitution. Such actions were, therefore, done in conscious disregard of the rights of Plaintiff to be free of discrimination in the workplace, among other rights secured under California law. Plaintiff is informed and believes, and thereon alleges, that his termination by Defendants, and each of them, was done with an intent to cause injury to Plaintiff. Because of the aforesaid oppressive, malicious, and despicable conduct, Plaintiff is entitled to an award of compensatory and punitive damages in a sum to be shown according by proof.

**SIXTH CAUSE OF ACTION**
**(Violations of California Labor Code Sections 201, 203, 218, 226.7, 512(a), 1194, 1198 as against All Defendants)**

53. Plaintiff realleges and incorporates herein by reference paragraphs 1 through 22, inclusive, as if fully set forth herein.

54. Defendant WHH engaged in a regular practice of under-scheduling Respiratory Therapists (and other medical providers) in sufficient numbers to provide adequate relief to the RTs to enable them to take lawful breaks. Such short-staffing practices had the effect, in the case

16

of Plaintiff, of depriving him of his rights to wages and benefits under Labor Code sections 201, 203, 218, 226.7, 512(a), 1194 and 1198. Defendant WHH appears to have attempted to avoid compliance with wage and hour rules through adoption of an Alternative Work Schedule ("AWS") which covered most of the patient care staff units at West Hills.  He was informed that the AWS had been implemented pursuant to a vote of the employees on October 1, 2000. However, Plaintiff is informed and believes and thereon alleges that this election did not take place or did not take place pursuant to applicable law.  Plaintiff is informed and believes and thereon alleges that if there was such an attempted election, the required disclosures were not made to the employees at the time of the election such that there was and is no valid AWS. Accordingly, Plaintiff is entitled to substantially greater payments relative to unpaid overtime, plus any alleged signed meal period waiver is invalid and unenforceable.

55. Understaffing in the medical care context has been acknowledged as a proper basis for findings that medical facilities have failed to "provide" legal rest and meal breaks to direct patient care medical staff. *Alberts v. Aurora Behavioral Health Care* (2015) 241 Cal.App.4[th] 388.  As explained in *Alberts*, this can be shown by a practice of the facility and has particular importance in the context of provision of medical care.  "Plaintiffs … have proceeded on the theory that the hospital's practices amounted to a de facto illegal policy.  Plaintiffs have alleged that the hospital systematically understaffed its nursing positions, making it impossible for all employees to take all the breaks to which they were entitled. . . [referring to a situation where a violation could be shown] if an employer "knowingly encouraged a uniform *de facto* practice inconsistent with labor law. *Alberts, supra,* at 422.

56. Defendant WHH was required to provide Plaintiff with one off-duty meal break per shift, assuming that the waiver of the other meal break was valid.  Respiratory Therapists were never allowed to leave the premises during meal breaks.  Therefore, these were "on duty" breaks when they were offered at all.  In any event, because the employees were subject to the control of the hospital and frequently had to work during the "breaks", they were not the one meal break per 12-hour shift which they did not waive.  Defendant WHH is liable for payment of a wage/penalty

**PLAINTIFF'S COMPLAINT**

1   in the amount of one hour's wages for each such break not provided.

2      57. Defendant WHH was required to provide Plaintiff with two ten-minute off-duty rest

3   breaks per shift.  These breaks were simply not provided.  Defendant WHH is liable for payment

4   of a wage/penalty in the amount of one hour's wages for each such break not provided.

5   Compensation for meal and rest breaks and related claims are governed by, *inter alia*, *Labor*

6   *Code* §§ 226.7, 512(a) and 1198.

7      58. Defendant WHH was required to pay Plaintiff for all hours worked, including all

8   overtime hours, and specifically all "on duty" meal periods.  Depending on the length of a shift,

9   on-duty meal periods would be counted for purposes of determining whether he worked more

10   than twelve hours on any given shift, or more than forty hours in a week, which would have

11   significance when determining whether he was paid for all time worked, either at the regular rate

12   or at overtime premium rates.  Failure to pay for all hours worked constitutes a violation of

13   *Labor Code* § 1198, *et seq.*

14      59. Defendant WHH failed to provide Plaintiff three legally required breaks on each twelve-

15   hour shift (two rest breaks and one meal break.)  The penalty for each occasion on which

16   required breaks are not provided is one hour of pay.  However, courts normally limit a plaintiff

17   to recovery of only two penalty payments per shift.  Therefore, the liability for missed meal and

18   rest breaks amounts to two hours of pay for each day these breaks were not provided during the

19   past four years (the applicable statute of limitations for these claims.)

20      60. By virtue of plaintiff having provided uncompensated overtime service, according to

21   proof, during the course of his employment at WHH, Plaintiff is entitled to overtime

22   compensation according to proof, under Labor Code section 1194. Plaintiff is further entitled to

23   be paid the legal overtime pay rate under the law, including all applicable penalties thereto.

24   Plaintiff is further entitled to statutory attorney fees under Labor Code §1194(a). Defendants owe

25   Plaintiff unpaid wages.  Plaintiff is entitled to damages, pursuant to California law, including, but

26   not limited to, under Labor Code sections 201, 203 and 218, including all applicable penalties

27   thereto.

28

18

**PLAINTIFF'S COMPLAINT**

61. Pursuant to LC 201, it is unlawful for an employer to willfully fail to pay an employee wages and benefits due at time of termination.  Plaintiff brings further action under LC 203, which provides if an employer willfully fails to pay wages and benefits of an employee who is discharged, the wages of such employee shall continue to accrue from the date thereof at the same rate until paid.  Plaintiff is owed wages, benefits, overtime pay, compensation for meal/rest periods, vacation pay, and severance.  More than 30 days have passed since termination and thus penalties apply.  Attorney's fees are sought under all applicable statutes referenced in this cause of action.

## VII.

## SEVENTH CAUSE OF ACTION

## WHISTLEBLOWER PROTECTION [LC 1102]

## (AGAINST ALL DEFENDANTS)

62. Plaintiff realleges and incorporates herein by reference paragraphs 1 through 22, inclusive, as if fully set forth herein.

63. At all times mentioned in this complaint, California Labor Code §1102.5 was in full force and effect and binding on Defendants. This section provides, in relevant part, that:

"(b)  An employer, or any person acting on behalf of the employer, shall not retaliate against an employee for disclosing information, or because the employer believes that the employee disclosed or may disclose information, to a government or law enforcement agency, **to a person with authority over the employee or another employee who has the authority to investigate, discover, or correct the violation or noncompliance,** or for providing information to, or testifying before, any public body conducting an investigation, hearing, or inquiry, if the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation, regardless of whether disclosing the information is part of the employee's job duties (emphasis added);

(c)  An employer, or any person acting on behalf of the employer, shall not retaliate

19

against an employee for refusing to participate in an activity that would result in a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation.

(d)  An employer, or any person acting on behalf of the employer, shall not retaliate against an employee for having exercised his or her rights under subdivision (a), (b), or (c) in any former employment."

64. Plaintiff is informed and believes that the acts committed by Defendants and described above are contrary to both state and federal laws governing health care facilities and workers. Plaintiff is further informed and believes and thereon alleges that his reporting of acts and practices potential injurious to patients was a protected activity under California law, and was the basis for Defendants' decision to terminate him. As a result of discharging Plaintiff for engaging in a protected activity, Defendants violated Labor Code §1102.5 as well as California common law. Plaintiff reasonably objected to Defendants' wrongful conduct, had reasonable cause to believe that his participation in protected activities would result in a violation of state/federal/local statute/regulation/rule.  Plaintiff had a reasonable belief that such conduct was unlawful.

65. As a proximate result of Defendants' conduct, Plaintiff has sustained and continues to sustain substantial losses in his earnings and other employment benefits and continues to suffer humiliation, emotional distress, and mental and physical pain and anguish, all to his damage in a sum according to proof.

66. Defendants' conduct as described above was willful, despicable, knowing, and intentional; accordingly, Plaintiff seeks an award of punitive and exemplary damages in an amount according to proof.

67. Plaintiff has incurred and continues to incur legal expenses and attorney fees. Plaintiff is presently unaware of the precise amount of these expenses and fees and prays leave of court to amend this complaint when the amounts are more fully known.

**PLAINTIFF'S COMPLAINT**

**VIII.**

**EIGHTH CAUSE OF ACTION**

**RETALIATION [GC 12940(h)]**

**(AGAINST ALL DEFENDANTS)**

68. Plaintiff realleges and incorporates herein by reference paragraphs 1 through 22, inclusive, as if fully set forth herein.

69. By virtue of the conduct alleged hereinabove, Defendants and each of them retaliated against Plaintiff in violation of Govt C §12940(h). This section states, in pertinent part:

"It is an unlawful employment practice… (h)  For any employer…or person to discharge… any person because the person has opposed any practices forbidden under this part…"

70. As a direct and proximate result of said wrongful acts and omissions on the part of Defendants and each of them, Plaintiff sustained general damages for severe mental and emotional distress, in sums prayed.

71. As a further direct and proximate result of the wrongful acts and omissions on the part of Defendants, and each of them, Plaintiff was unable to maintain his employment and thereby sustained economic damages, according to proof.

72. Defendants and each of them acted with malice and oppression toward Plaintiff, and with conscious disregard for his rights. Furthermore, Defendant WHH willfully failed to fulfill its obligations to assure that all steps reasonably necessary were taken to prevent retaliation for Plaintiff's protesting of unethical and illegal health care practices. Therefore, punitive damages should be assessed against Defendant WHH in a sum sufficient to punish it and set an example in view of its financial condition.

73. Plaintiff is further entitled to statutory attorney fees pursuant to Govt C §2965(b). Defendants and each of them wrongfully retaliated against Plaintiff for acts and reasons connected to Plaintiff's protected status under the FEHA.

21

## IX.

## NINTH CAUSE OF ACTION

## BREACH OF EMPLOYMENT CONTRACT

## (AGAINST DEFENDANT WHH)

74. Plaintiff realleges and incorporates herein by reference paragraphs 1 through 22, inclusive, as if fully set forth herein.

75. During the entire course of Plaintiff's employment with Defendant WHH, there existed an oral, express and/or implied-in-fact employment contract between Plaintiff and Defendant WHH that, at the time of Plaintiff's discharge from his WHH employment, included but was not limited to, the following terms and conditions:

A. Plaintiff would be able to continue his employment with defendant WHH indefinitely if he carried out his duties in a proper and competent manner;

B. Plaintiff would not be demoted, discharged, or otherwise disciplined, nor would Plaintiff's job functions be reassigned for other than good cause with notice thereof;

76. This employment contract was evidenced by various written documents, commendations, oral representations to Plaintiff by WHH's agents and employees, and the parties' entire course of conduct, pattern and practice, including the following:

A. WHH's written personnel policies and discipline procedures;

B. The existence of an established policy within WHH which was known to and relied on by Plaintiff, that an employee such as Plaintiff, who had performed service as a good and faithful employee, would have secure employment with Defendants; that an employee such as Plaintiff would be permitted to continue his employment unless discharged for good and sufficient cause; that an employee such as Plaintiff would not be discharged without good and sufficient cause; that an employee such as Plaintiff, with a grievance or complaint lodged against him, would be provided a meaningful opportunity to respond and improve; and that an employee such as Plaintiff would not be demoted, discharged, or disciplined without good and sufficient cause and

22

would not otherwise have his job functions taken away or reassigned.

C. Throughout his employment, Plaintiff was told by his superiors, orally and in writing, that he was doing a satisfactory job. As a result of the above representations, Plaintiff came reasonably to expect and to rely on the promise of job security. Such statements and acts by Defendants and each of them communicated to Plaintiff the idea that he had performed satisfactorily and that his job was secure. Plaintiff in good faith relied on these representations and believed them to be true.

77. As independent consideration, in addition to performing his regular duties as an employee of Defendant, Plaintiff refrained from seeking other employment and pursuing other career opportunities.

78. Plaintiff understood and duly performed all conditions of the contract to be performed by him. Plaintiff had, at all times, been ready, willing, and able to perform and had offered to perform all the conditions of this contract to be performed by him.

79. Despite the representations made to Plaintiff and the reliance he placed on them, defendant WHH failed to carry out its responsibilities under the terms of the employment contract and breached the contract in the following ways:

A. Subjecting Plaintiff to different standards from those set for other employees;

B. Terminating Plaintiff's employment without cause and for reasons that have nothing to do with legitimate business justification, despite satisfactory job performance;

C. Failing to follow its own written personnel policies or to apply the same personnel policies to Plaintiff that they apply to other employees;

D. Failing and refusing to place Plaintiff in alternative positions that were available and for which Plaintiff was qualified.

80. As a proximate result of WHH's breach, Plaintiff has suffered and continues to suffer substantial losses in earnings, bonuses, and other employment benefits that he would have received had Defendants not breached said agreement, including but not limited to expenses incurred in obtaining substitute employment, all to his damage in an amount according to proof.

**PLAINTIFF'S COMPLAINT**

**DEMAND FOR TRIAL BY JURY**

Plaintiff hereby demands a trial by jury.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1.   General damages in a sum according to proof;

2.   Special damages including loss of income, earnings, other employment benefits, medical expenses, and other consequential damages in a sum according to proof;

3.   For mental and emotional distress damages;

4.   For an award of interest, including prejudgment interest, at the legal rate;

5.   For an award of prevailing party attorney fees;

6.   For punitive and exemplary damages in an amount sufficient to punish and deter Defendant's outrageous conduct;

7.   For costs of suit incurred herein; and

8.   For such other and further relief as the court deems just and proper.

DATED:  January 7, 2022                LAW OFFICES OF NEEMA TAVAKOLI


BY:_____
           NEEMA TAVAKOLI, Esq.
           Attorney for Plaintiff AKBAR AFRIDI

24

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**PLAINTIFF'S COMPLAINT**

# EXHIBIT A



**SEIU-UHW**
United Healthcare Workers West

UNITED HEALTHCARE
WORKERS WEST
SERVICE EMPLOYEES
INTERNATIONAL
UNION, CLC

Dave Regan - President
Stan Lyles - Vice President

560 Thomas L. Berkley Way
Oakland, CA 94612
510-251-1250
FAX 510-763-2680

5480 Ferguson Drive
Los Angeles, CA 90022
323-734-8399
FAX 323-721-3538

www.SEIU-UHW.org



**7012 0470 0002 4755 5966**
**Return Receipt Requested**
**U.S. Certified, Regular Mail & Electronic Mail**

July 22, 2020

Akbar Afridi
19444 Calvert Street
Tarzana, CA 91335

| **Grievance #:** | **2019-11-27-2377** |
| **Facility:** | **West Hills Hospital and Medical Center** |
| **Issue:** | **3 Day Suspension / Termination** |

Dear Mr. Afridi,

On behalf of our Union, we would like to express our appreciation for your attendance at the panel hearing. We understand how difficult the navigation of the grievance and arbitration process can be to our fellow members.

Our role as panelists is to make decisions on behalf of our Union to advance cases to arbitration in which we believe the Union is likely to prevail. We don't take this role lightly. We rely on information provided to us by the Union Stewards and Representatives and most importantly provided by the grievant.

During the hearing, there was no testimony, nor additional information, nor supplemental evidence provided that would support overturning the original recommendation to withdraw this grievance. For these reasons, this panel has determined that the Union is not likely to prevail in arbitration.

We understand that this has been a challenging situation, but based on all the information presented to us, this panel has determined that your case should not be advanced to arbitration. According to the guidelines of the Executive Board, this decision is final.

We wish you luck in the future.

Sincerely,

SEIU-UHW Appeal Panel

cc:  Veronica Chavez, Rep. Excellence Coordinator
 Valerie McCan-Murrell, Rep. Excellence Dept.
 Jared Mayhugh, Rep. Excellence Dept.
 Erika Moody-Gillard, Coordinator
 Mayte Paniagua, Union Representative

VC/eg,seiu-uhw

# EXHIBIT B



# CALIFORNIA DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING
# RIGHT-TO-SUE

Your submission of this document acknowledges that you have read and agree to the DFEH's Privacy Policy. By submitting this document, you are declaring under penalty of perjury under the laws of the State of California that to the best of your knowledge all information stated is true and correct, except matters stated on information and belief, which you believe to be true.

## DFEH CASE NUMBER (IF APPLICABLE):

202008-11092228

## COMPLAINANT:

NAME:
AKBAR AFRIDI

TELEPHONE NUMBER:
(818) 800-1143

ADDRESS:
19444 CALVERT STREET

EMAIL ADDRESS:
akbara800@me.com

CITY/STATE/ZIP:
TARZANA, CA 91335

## RESPONDENT:

NAME:
WEST HILLS HOSPITAL & MEDICAL CENTER

TELEPHONE NUMBER:

ADDRESS:
7300 MEDICAL CENTER DRIVE

CITY/STATE/ZIP:
WEST HILLS, CA 91307

NUMBER OF EMPLOYEES: _____50+_____   TYPE OF EMPLOYER: _____

RECEIVED

AUG 2 7 2020

Department of Fair Employment & Housing
Elk Grove

Right-to-Sue (DFEH 902-6M) Revised 7/2019

**ADD CO-RESPONDENT:**

NAME:_____HEALTHCARE CORP. OF AMERICA_____

TITLE:_____

ADDRESS:_____ONE PARK PLAZA_____

_____NASHVILLE, TN 32703_____

TELEPHONE NUMBER:_____

**ADD CO-RESPONDENT:**

NAME:_____

TITLE:_____

ADDRESS:_____

_____

TELEPHONE NUMBER:_____

**DATE OF HARM:**

LAST DATE OF HARM (Month/Day/Year):_____09.30.2019_____

1. I ALLEGE THAT I EXPERIENCED: [X] Discrimination   [ ] Harassment

**BECAUSE OF MY ACTUAL OR PERCEIVED:**

[ ] Age (40 and over)

[ ] Ancestry

[ ] Association with a member of a protected class

[ ] Baby Bonding Leave (employers of 20-49 people)

[ ] Color

[ ] Criminal History

[ ] Disability (physical or mental)

[ ] Family Care or Medical Leave (CFRA) (employers of 50 or more people)

[ ] Gender Identity or Expression

[ ] Genetic Information or Characteristic

[ ] Marital Status

[ ] Medical Condition (cancer or genetic characteristic)

[ ] Military and Veteran Status

[X] National Origin (includes language restrictions)

[ ] Pregnancy, childbirth, breastfeeding, and/or related medical conditions

[X] Race

[ ] Religious creed (includes dress and grooming practices)

[ ] Sex/Gender

[ ] Sexual harassment – hostile environment

[ ] Sexual harassment – quid pro quo

[ ] Sexual orientation

[X] Other (specify) _____ WHISTLE BLOWER _____

Right-to-Sue (DFEH 902-6M) Revised 7/2019

**AS A RESULT, I WAS:**

☐ Asked impermissible non-job-related questions
☐ Demoted
☐ Denied accommodation for pregnancy
☐ Denied accommodation for religious beliefs
☐ Denied any employment benefit or privilege
☐ Denied Baby Bonding Leave (employers of 20-49 people)
☐ Denied employer paid health care while on pregnancy disability leave
☐ Denied equal pay
☐ Denied Family Care or Medical Leave (CFRA) (employers of 50 or more people)
☐ Denied hire or promotion
☐ Denied or forced to transfer
☐ Denied reasonable accommodation for a disability
☐ Denied the right to wear pants
☐ Denied work opportunities or assignments
☐ Forced to quit
☐ Laid off
☐ Reprimanded
☐ Suspended
☒ Terminated
☐ Other (specify) _____

I ALLEGE THAT I EXPERIENCED:     ☒ Retaliation

**BECAUSE I:**

☐ Participated as a witness in a discrimination or harassment complaint
☐ Reported or resisted any form of discrimination or harassment
☒ Reported patient abuse (hospital employees only)
☐ Requested or used a disability-related accommodation
☐ Requested or used a pregnancy-disability-related accommodation
☐ Requested or used a religious accommodation
☐ Requested or used baby bonding leave (employers of 20-49 people)
☐ Requested or used leave under the California Family Rights Act or FMLA
    (employers of 50 or more people)

Right-to-Sue (DFEH 902-6M) Revised 7/2019

**AS A RESULT I WAS:**

| | |
|---|---|
| ☐ | Asked impermissible non-job-related questions |
| ☐ | Demoted |
| ☐ | Denied accommodation for pregnancy |
| ☐ | Denied accommodation for religious beliefs |
| ☐ | Denied any employment benefit or privilege |
| ☐ | Denied baby bonding leave (employers of 20-49 people) |
| ☐ | Denied employer paid health care while on pregnancy disability leave |
| ☐ | Denied equal pay |
| ☐ | Denied Family Care or Medical Leave (CFRA) (employers of 50 or more people) |
| ☐ | Denied hire or promotion |
| ☐ | Denied or forced to transfer |
| ☐ | Denied reasonable accommodation for a disability |
| ☐ | Denied the right to wear pants |
| ☐ | Denied work opportunities or assignments |
| ☐ | Forced to quit |
| ☐ | Laid off |
| ☐ | Reprimanded |
| ☐ | Suspended |
| ☒ | Terminated |
| ☐ | Other (specify) _____ |

2.  Do you have an attorney who agreed to represent you in this matter?  ☒ Yes  ◯ No
    If yes, please provide the attorney's contact information.

**COMPLAINANT'S REPRESENTATIVE INFORMATION**

Attorney Name: _____NEEMA TAVAKOLI_____

Attorney Firm Name: _____LAW OFFICES OF NEEMA TAVAKOLI_____

Attorney Address: _____4924 BALBOA BLVD., STE 613_____

Attorney City, State, and Zip: _____ENCINO, CA 91316_____

3. Briefly describe what you believe to be the reason(s) for the discrimination, harassment, or retaliation. (Optional)

West Hills' Respiratory Care Department underwent a change in management during late 2018. After many years of satisfactory employment, Mr. Afridi noticed that a significantly different attitude prevailed in the Department. The new Manager implemented practices that were focused on increasing efficiency at the expense of patient care. New management also demonstrated a discriminatory bias against Mr. Afridi based on both his age and national origin/race. The new management treated the Caucasian Therapists with respect and general favoritism, while treating Mr. Afridi with disdain, even to the extent of refusing to shake his hand he he tried to introduce himself to new management. The negative treatment of Mr. Afridi was compounded when Mr. Afridi actively opposed the efforts to increase efficiency at the expense of quality of patient care. This opposition quickly brought about his termination within a matter of months.

Mr. Afridi's termination was wrongful under California law because it was executed in retaliation for his opposition to practices which he reasonably believed were unlawful and/or violative of ethical duties. Discrimination against him on the basis of age and race were also substantial factors driving the termination decisions.

## VERIFICATION PAGE – THIS PAGE MUST BE COMPLETED

**Before submitting the form, you must verify who you are and whether you are submitting this information for yourself or someone else.**

Verifier Name:   NEEMA TAVAKOLI

Verifier's Relationship to Complainant:   ATTORNEY REPRESENTING COMPLAINANT

Verifier's City and State:   LOS ANGELES, CALIFORNIA

**By submitting this document, you are declaring under penalty of perjury under the laws of the State of California that to the best of your knowledge all information stated is true and correct, except matters stated on information and belief, which you believe to be true.**

Right-to-Sue (DFEH 902-6M) Revised 7/2019

## DEMOGRAPHIC INFORMATION

### THIS INFORMATION IS OPTIONAL AND IS ONLY USED FOR STATISTICAL PURPOSES.

Primary Language: ___ENGLISH___                    Age: ___58___

**GENDER / GENDER IDENTITY:**

[X] Male    [ ] Female    [ ] Non-Binary    [ ] Other

**MARITAL STATUS:**

[X] Single    [ ] Married    [ ] Cohabitation    [ ] Divorced

**RACE:**

[ ] American Indian, Native American or Alaskan Native

[ ] Asian

[ ] Black or African American

[ ] Native Hawaiian or Other Pacific Islander

[ ] White

[X] Other

**ETHNICITY:**

[ ] Hispanic or Latino            [ ] Non-Hispanic or Latino

**NATIONAL ORIGIN:**

[X] Afghani            [ ] German            [ ] Japanese            [ ] Other Middle Eastern
[ ] American [U.S.A]  [ ] Ghanaian          [ ] Korean             [ ] Pakistani
[ ] Asian Indian      [ ] Guamanian         [ ] Laotian            [ ] Puerto Rican
[ ] Bangladeshi       [ ] Haitian           [ ] Lebanese           [ ] Salvadoran
[ ] Cambodian         [ ] Hawaiian          [ ] Malaysian          [ ] Samoan
[ ] Canadian          [ ] Hmong             [ ] Mexican            [ ] Sri Lankan
[ ] Chinese           [ ] Indonesian        [ ] Nigerian           [ ] Syrian
[ ] Cuban             [ ] Iranian           [ ] Other              [ ] Taiwanese
[ ] Dominican         [ ] Iraqi             [ ] Other African      [ ] Thai
[ ] Egyptian          [ ] Irish             [ ] Other Asian        [ ] Tongan
[ ] English           [ ] Israeli           [ ] Other Caribbean    [ ] Vietnamese
[ ] Ethiopian         [ ] Italian           [ ] Other European
[ ] Fijian            [ ] Jamaican          [ ] Other Hispanic/Latino
[ ] Filipino

Right-to-Sue (DFEH 902-6M) Revised 7/2019

## DEMOGRAPHIC INFORMATION
THIS INFORMATION IS OPTIONAL AND IS ONLY USED FOR STATISTICAL PURPOSES.

**DISABILITY:**

| | | | |
|---|---|---|---|
| ☐ | AIDS or HIV | ☐ | Limbs [Arms / Legs] |
| ☐ | Blood / Circulation | ☐ | Mental |
| ☐ | Brain / Nerves / Muscles | ☐ | Sight |
| ☐ | Digestive / Urinary / Reproduction | ☐ | Speech / Respiration |
| ☐ | Hearing | ☐ | Spinal / Back / Respiration |
| ☐ | Heart | ☐ | Other Disability |

**RELIGION:**

| | | | |
|---|---|---|---|
| ☐ | Agnostic | ☐ | Nonreligious |
| ☐ | Atheist | ☐ | Protestantism |
| ☐ | Bahai | ☐ | Primal-indigenous |
| ☐ | Buddhism | ☐ | Quakers |
| ☐ | Catholicism | ☐ | Rastafarianism |
| ☐ | Christianity | ☐ | Spiritism |
| ☐ | Confucianism | ☐ | Shinto |
| ☐ | Hinduism | ☐ | Sikhism |
| ☒ | Islam | ☐ | Taoism |
| ☐ | Jehovah's Witness | ☐ | Unitarian-Universalism |
| ☐ | Judaism | ☐ | Zoroastrianism |
| ☐ | Neo-Paganism | ☐ | Other |

**SEXUAL ORIENTATION:**

☒ Straight or Heterosexual    ☐ Gay or Lesbian    ☐ Bisexual    ☐ Other

Right-to-Sue (DFEH 902-6M) Revised 7/2019

# EXHIBIT C



STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**
2218 Kausen Drive, Suite 100 I Elk Grove I CA I 95758
(800) 884-1684 (Voice) I (800) 700-2320 (TTY) I California's Relay Service at 711
http://www.dfeh.ca.gov I Email: contact.center@dfeh.ca.gov

GAVIN NEWSOM, GOVERNOR
KEVIN KISH, DIRECTOR

August 28, 2020

Akbar Afridi
19444 Calvert Street
Los Angeles, CA 91335

RE:     **Notice of Case Closure and Right to Sue**
DFEH Matter Number: 202008-11092228
Right to Sue: Afridi / West Hills Hospital & Medical Center et al.

Dear Akbar Afridi,

This letter informs you that Department of Fair Employment and Housing received your
request for a Right to Sue. The above-referenced complaint was **filed on August 27,
2020** with the Department of Fair Employment and Housing. As of August 27, 2020,
your case is closed. Department of Fair Employment and housing will take no further
action on the complaint.

This letter is also your Right to Sue notice. According to Government Code section
12965, subdivision (b), a civil action may be brought under the provisions of the Fair
Employment and Housing Act against the person, employer, labor organization or
employment agency named in the above-referenced complaint. The civil action must be
filed within one year from the date of this letter.

To obtain a federal Right to Sue notice, you must contact the U.S. Equal Employment
Opportunity Commission (EEOC) to file a complaint within 30 days of receipt of this
DFEH Notice of Case Closure letter or within 300 days of the alleged discriminatory act,
whichever is earlier.
Sincerely,

Department of Fair Employment and Housing



STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency                                    GAVIN NEWSOM, GOVERNOR

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**                                    KEVIN KISH, DIRECTOR
2218 Kausen Drive, Suite 100 | Elk Grove | CA | 95758
(800) 884-1684 (Voice) | (800) 700-2320 (TTY) | California's Relay Service at 711
http://www.dfeh.ca.gov | Email: contact.center@dfeh.ca.gov

August 28, 2020

RE:  **Notice of Filing of Discrimination Complaint**
 DFEH Matter Number: 202008-11092228
 Right to Sue: Afridi / West Hills Hospital & Medical Center et al.

To All Respondent(s):

Enclosed is a copy of a complaint of discrimination that has been filed with the
Department of Fair Employment and Housing (DFEH) in accordance with Government
Code section 12960. This constitutes service of the complaint pursuant to Government
Code section 12962. The complainant has requested an authorization to file a lawsuit.
This case is not being investigated by DFEH and is being closed immediately. A copy of
the Notice of Case Closure and Right to Sue is enclosed for your records.

Please refer to the attached complaint for a list of all respondent(s) and their contact
information.

No response to DFEH is requested or required.

Sincerely,


Department of Fair Employment and Housing



STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**
2218 Kausen Drive, Suite 100 | Elk Grove | CA | 95758
(800) 884-1684 (Voice) | (800) 700-2320 (TTY) | California's Relay Service at 711
http://www.dfeh.ca.gov | Email: contact.center@dfeh.ca.gov

GAVIN NEWSOM, GOVERNOR
KEVIN KISH, DIRECTOR

August 28, 2020

Neema Tavakoli
4924 Balboa Boulevard, Ste 613
Encino, CA 91316

RE: **Notice to Complainant's Attorney**
DFEH Matter Number: 202008-11092228
Right to Sue: Afridi / West Hills Hospital & Medical Center et al.

Dear Neema Tavakoli:

Attached is a copy of your complaint of discrimination filed with the Department of Fair Employment and Housing (DFEH) pursuant to the California Fair Employment and Housing Act, Government Code section 12900 et seq. Also attached is a copy of your Notice of Case Closure and Right to Sue.

**Pursuant to Government Code section 12962, DFEH will not serve these documents on the employer.** You must serve the complaint separately, to all named respondents. Please refer to the attached Notice of Case Closure and Right to Sue for information regarding filing a private lawsuit in the State of California. A courtesy "Notice of Filing of Discrimination Complaint" is attached for your convenience.

Be advised that the DFEH does not review or edit the complaint form to ensure that it meets procedural or statutory requirements.

Sincerely,

Department of Fair Employment and Housing